UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALLSTATE INDEMNITY COMPANY,

Plaintiff,

v.

KARYSSA MARIE PACHECO, a single adult woman; FRANK XAVIER DAVALOS and JANE DOE DAVALOS; KITSAP COUNTY SHERIFF'S OFFICE; and SOUTH KITSAP SCHOOL DISTRICT #402,

Defendants.

Case No. 3:14-cv-05366-KLS

ORDER GRANTING PLAINTIFF ALLSTATE INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on the filing a motion for summary judgment by plaintiff Allstate Indemnity Company ("Allstate"). The parties have consented to have this matter heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73 and Local Rule MJR 13. After having reviewed Allstate's motion and the remaining record, the Court finds that for the reason set forth below Allstate's motion should be granted.

FACTUAL AND PROCEDURAL HISTORY

On November 1, 2013, an amended complaint for personal injuries, negligence, abuse, exploitation, and sexual assault was filed by defendant Karyssa Marie Pacheco ("Pacheco") in Kitsap County Superior Court. See ECF #21-1. In that complaint, Pacheco alleged that on or between January 2005 through January 2007, Davalos "did have repeated intentional unwanted sexual contact with" her "while she was in her home and while in the [Kitsap County] Sheriffs'

[sic] vehicle provided to . . . Davalos," and that such contact constituted sexual assaults. Id. at pp. 2-3. Pacheco also alleged that she "was sexually assaulted by . . . Davalos, as least once while he was taking her home from school," and that defendant Kitsap School District #402 – for which Davalos "was the school resource officer" – "allowed [him] to take [Pacheco] home, even after [her] mother and . . . Davalos started a dissolution action." Id. at p. 3.

During the period at issue in Pacheco's complaint, January 2005 through January 2007, three homeowners insurance policies Allstate issued to Davalos were in effect. See ECF #21-2, #21-3, #21-4. Each policy provided in relevant part:

> 1. "**You**" or "**your**" – means the person named on the Policy Declarations as the insured and that person's resident spouse.
>
> . . .
>
> 3. "**Insured person(s)**" – means **you** and, if a resident of **your** household;
> a) any relative; and
> b) any dependent person in **your** care.
>
> . . .
>
> 4. "**Bodily Injury**" – means physical harm to the body . . .
>
> . . .
>
> 9. "**Occurrence**" – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** . . .
>
> . . .
>
> ***Insuring Agreement***
>
> . . .
>
> . . . The policy applies only to losses or **occurrences** that take place during the policy period. . . .

. . .

***Coverage X***
***Family Liability Protection***

***Losses We Cover Under Coverage X:***
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** . . . arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent . . .

***Losses We Do Not Cover Under Coverage X:***
1. **We** do not cover any **bodily injury** . . . intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
a) such **bodily injury** . . . is of a different kind or degree than intended or reasonably expected; or
b) such **bodily injury** . . . is sustained by a different person than intended or reasonably expected.

2. **We** do not cover **bodily injury** to an **insured person** . . . whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

ECF #21-2, pp. 22-24, 42 (emphasis in original); see also ECF #21-3, pp. 16-18, 36 (emphasis in original); ECF #21-4, pp. 16-18, 36 (emphasis in original).

Pacheco's state court case was removed to this Court on November 8, 2013. See Pacheco v. Davalos et al, Case 3:13-cv-5972-BHS, ECF #1. On April 18, 2014, District Judge Benjamin H. Settle remanded the matter back to state court. See id. at ECF #42. On May 2, 2014, Allstate filed a complaint for declaratory judgment with this Court, alleging the following:

**IV. DECLARATORY JUDGMENT ACTION**

16. A justiciable controversy exists between the parties hereto. This controversy can be resolved by this Court through entry of its Judgment declaring the rights and liabilities of the parties alleged herein under the

> contracts of insurance alleged above.
>
> 17. There is no occurrence under the policy as acts constituting sexual abuse is not an occurrence.
>
> 18. The intentional and criminal acts exclusion in the Allstate policy excludes coverage for conduct based on either intentional or criminal acts.
>
> 19. For the time period that . . . Pacheco was residing with . . . Davalos she would be an insured person under the policy. The policy excludes coverage for bodily injury to an insured person whenever any benefit of this coverage would accrue directly or indirectly to an insured person.
>
> 20. The Court should enter a Judgment wholly in favor of Allstate declaring, adjudicating, and decreeing that Allstate is not obligated to provide coverage or a defense for . . . Davalos for the claims alleged in [Pacheco's c]omplaint under the insurance contract, for and to the extent said obligations are excluded by the contract of insurance, based on the allegations of [Pacheco's c]omplaint against . . . Davalos and [Pacheco's] status, residency and relationship to . . . Davalos.

ECF #1, p. 9. On September 10, 2014, Allstate filed its motion for summary judgment, arguing the Court should declare "that there is no coverage or duty to defend for the claims made by . . . Pacheco," because Davalos's alleged acts of sexual assault "do not constitute an 'occurrence' as required by" the insurance policies, and because those acts "are intentional or criminal acts for which no coverage is provided." ECF #20, p. 2.

On October 22, 2014, that motion was denied because Allstate had not met its burden of showing complete diversity between the parties, and thus the Court was without subject matter jurisdiction over the case. See ECF #26. Allstate, however, was given leave to file an amended complaint curing that jurisdictional defect, which it did on October 24, 2014. See ECF #27. That amended complaint alleges the same basis for declaratory relief as was alleged in the original complaint. See id. at pp. 8-9. Also on October 24, 2004, Allstate filed its current motion for summary judgment, arguing summary judgment should be granted in its favor because it has no duty to defend or indemnify since: (1) there has been no "occurrence" as that term is defined under the insurance policies; and (2) the insurance policies exclude from coverage intentional

and criminal acts. See ECF #28. Allstate's motion was noted for December 5, 2014. See id. To date no response to that motion, or answer to the amended complaint, has not been filed.

DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. See id. The moving party must demonstrate the absence of a genuine issue of fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. See California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." T.W. Electrical Serv., 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

grant of summary judgment." Id. Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).

DISCUSSION

Under Washington law, "[i]nsurance policies are to be construed as contracts, and interpretation is a matter of law."[1] State Farm General Ins. Co. v. Emerson, 102 Wn.2d 477, 480 (1984). "The entire contract must be construed together in order to give force and effect to each clause," and be enforced "as written if the language is clear and unambiguous." Washington Pub. Util. Districts' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County ("Washington Pub."), 112 Wn.2d 1, 10 (1989); see also Transcon. Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys., 111 Wn.2d 452, 456 (1988) (if insurance contract language is clear and unambiguous, court "may not modify the contract or create ambiguity where none exists"). If, on the other hand, "a policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended." Transcon. Ins. Co., 111 Wn.2d at 456-57; see also Kish v. Ins. Co. of N. Am., 125 Wn.2d 164, 171 (1994).

An insurance contract "will be given a practical and reasonable interpretation that fulfills

[1] "Where a federal court sits in diversity jurisdiction, it must apply the state substantive law." Manufactured Housing Communities of Washington v. St. Paul Mercury Ins. Co., 660 F.Supp.2d 1208, 1214 (W.D. Wash. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). As there is no indication that the substantive law of Washington does not apply here, that law governs in this case.

the object and purpose of the contract rather than a strained or forced construction that leads to an absurd conclusion, or that renders the contract nonsensical or ineffective." Washington Pub., 112 Wn.2 at 11; see also Transcon. Ins. Co., 111 Wn.2d at 457. Further, insurance contracts are interpreted "as an average insurance purchaser would understand them and give undefined terms in these contracts their 'plain, ordinary, and popular' meaning." Kish, 125 Wn.2d at 170 (quoting Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 877 (1990)); see also Emerson, 102 Wn.2d at 480 (insurance contract interpreted "according to the way it would be understood by the average insurance purchaser"). If after attempting to discern the parties' intent the insurance contract language remains ambiguous, however, "the court will apply a meaning and construction most favorable to the insured, even though the insurer may have intended another meaning." Transcon. Ins. Co., 111 Wn.2d at 457; see also Washington Pub., 112 Wn.2d at 10-11.

"An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." Schorno v. State Farm Fire and Cas. Co., 2010 WL 3119449, at *4 (W.D. Wash., Aug. 3, 2010) (citing Holly Mountain Res. Ltd. V. Westport Ins. Corp., 130 Wn. App. 635, 647 (2005); Unigard Ins. Co. v. Leven, 97 Wn. App. 417, 425 (1999)). "An insurer is not relieved of the duty to defend unless the claim alleged in the complaint is clearly not covered by the policy." Id.; see also Farmers Ins. Co. of Washington v. Hembree, 54 Wn. App. 195, 202 (1989) ("[A]lleged claims which are clearly not covered by the policy relieve the insurer of its right and duty to defend.") (quoting Emerson, 102 Wn.2d at 486). "[I]f the claim is potentially within the coverage of the policy," therefore, the insurer must defend it. W. Nat'l Assurance Co. v. Hecker, 43 Wn. App. 816, 820 (1986).

Accordingly, "the determination of coverage" under an insurance contract "is a two-step

process." Diamaco, Inc. v. Aetna Cas. & Sur. Co., 97 Wn. App. 335, 337 (1999). "The insured must first establish that the loss falls within the 'scope of the policy's insured losses.'" Id. (quoting Schwindt v. Underwriters at Lloyd's of London, 81 Wn. App. 293, 298 (1996)). "Then, to avoid responsibility for the loss, the insurer must show that the loss is excluded by specific language in the policy." Id.; see also Pub. Employees Mut. Ins. Co. v. Rash, 48 Wn. App. 701, 703 (1987) ("[W]hen an insured establishes a prima facie case giving rise to coverage under the provisions of his policy, the burden is then upon the insurer to prove that the loss is not covered because of an exclusionary provision in the policy."). While an exclusionary clause is "strictly construed against the insurer," its meaning "must be determined in view of the policy as a whole." Allstate Ins. Co. v. Calkins, 58 Wn. App. 399, 402 (1990) (citing Rodriguez v. Williams, 107 Wn.2d 381, 384 (1986)); Hecker, 43 Wn. App. at 824 (citing Shotwell v. Transamerica Title Ins. Co., 91 Wn.2d 161, 166 (1978)).

Allstate argues there has been no "occurrence" under the insurance policies. The Court agrees. As noted above, as defined in those policies, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**." Because the insurance policies do not define the term "accident", however, it "must be given its popular and ordinary meaning." Hecker, 43 Wn. App. at 822. "For insurance coverage," furthermore, "accident" means "an unusual, unexpected, and unforeseen happening." Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 95 (1989) (citing Tieton v. Gen. Ins. Co. of Am., 61 Wn.2d 716, 721, 722 (1963)). As the Washington State Supreme Court has stated:

> an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 401 (1992) (quoting Detweiler v. J.D. Penney Cas. Ins. Co., 110 WN.2d 99, 104 (1988)). In addition, the term "accident" pursuant to this "common sense" definition is not subjective in nature. Roller v. Stonewall Ins. Co., 115 Wn.2d 679, 685 (1990). "Either an incident is an accident or it is not." Id. "Thus, the perspective of the insured is not a relevant inquiry." Id.

"[W]here the insured acts intentionally but claims that the result was unintended," furthermore, "the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable." Schorno, 2010 WL 3119449, at *5 (citing State Farm Fire & Cas. Co. v. Ham & Rye, LLC, 142 Wn. App. 6, 17 (2007); State Farm Fire & Cas. Co. v. Parrella, 134 Wn.App. 536, 540 (2006)). Accordingly, Washington courts have "routinely denied" coverage "for intentional acts as a matter of law, even when the harm is unintended." Id. (citing Pacific Ins. Co. v. Catholic Bishop of Spokane, 450 F.Supp.2d 1186, 1198 (E.D. Wash. 2006)).

In Washington, "[d]eliberate acts of sexual abuse and/or intercourse are not accidents so long as the abuser intended the act." Ramirez v. Allstate Ins. Co., 2012 WL 5384164, at *3 (W.D. Wash. Nov. 1, 2012) (citing Rodriquez, 107 Wn.2d at 387 (stating that "intent to injure, while normally a subjective determination . . . , should be inferred to the insured in sex abuse cases")). As Judge Ronald B. Leighton thus noted in Schorno:

> Unremarkably, under Washington law, a victim's claims against an insured for battery and assault, intentional infliction of emotional distress, outrage, and childhood sexual abuse do not arise from accident, and thus do not fall within scope of coverage under homeowner's insurance policies that cover only accidental occurrences. . . .

2010 WL 3119449, at *5 (citing Western Protectors Ins. Co. v. Shaffer, 624 F.Supp.2d 1292, 1298 (W.D. Wash. 2009)); see also Am. Econ. Ins. Co. v. Estate of Wilker, 96 Wn. App. 87, 91-

92 (1999) ("Washington courts routinely hold that a person who sexually abuses a child intends to injure the victim, regardless of the abuser's actual subjective intent."). This is particularly so in child sexual abuse cases, "because children inevitably sustain injury from sexual abuse." Id. at 92 (noting further that Washington courts "infer an intent to cause emotional distress as well a physical injury from acts of sexual abuse").[2]

As noted above, Pacheco's amended complaint alleges that at the time the insurance policies were in effect, Davalos had repeated intentional unwanted sexual contact with her, and that she was sexually assaulted by him at least once while being taking home from school. The acts Davalos allegedly committed, therefore, were intentional, and even if he did not subjectively intend to injure Pacheco, under Washington law that intent is inferred. Accordingly, none of the alleged acts of sexual assault can be said to be an "accident" under the common sense definition of that term used by Washington courts. As such, there has been no "occurrence" as that term is defined in the insurance policies that Allstate would be required to cover or defend. For the same reasons, Allstate has no duty to cover or defend pursuant to the insurance policies' exclusionary clause, because, as also noted above, that clause clearly states that bodily injury "intended by, or which may reasonably be expected to result from the intentional or criminal acts" of any insured person is excluded.

CONCLUSION

Based on the foregoing discussion, Allstate's motion for summary judgment (ECF #28) hereby is GRANTED. Allstate has no duty to defend or provide coverage in regard to the claims

[2] Although it is not entirely clear from the record before the Court as to whether Pacheco was a child during the time period at issue in this case, it appears she was a student at the South Kitsap County School District when she alleges Davalos sexually assaulted her – and thus likely a minor during some or all of that period – and defendants have not argued or shown otherwise. See ECF #1-1. Regardless, as noted above, Washington courts infer intent for deliberate acts of intercourse and for assaults in general as well.

contained in Pacheco's underlying state court complaint.

DATED this 12th day of January, 2015.

Karen L. Strombom
United States Magistrate Judge